## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT SUTTON                 :
1750 Main Street               :
Port Trevorton, PA 17864       :      CIVIL ACTION
                                        :
         Plaintiff,             :      No.: _____
                                        :
         v.                    :
                                        :      **JURY TRIAL DEMANDED**
LONG'S TREE SERVICE, LLC      :
5059 School Creek Lane         :
Annville, PA 17003               :
                                        :
         Defendant.           :
                                        :

## CIVIL ACTION COMPLAINT

Mr. Robert Sutton ("Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.  Mr. Sutton has initiated this action to redress violations by Long's Tree Service, LLC ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e et seq.), the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 et seq.), 42 U.S.C. §1981 ("§1981"),  Pennsylvania Common Law, and the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. § 951, et seq.).

2.  Plaintiff asserts herein that Defendant terminated Plaintiff after he sustained a serious workplace injury and opposed discriminatory comments.

3.  As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

4.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

5.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in Int'l Shoe Co. v. Washingto*n, 326 U.S. 310 (1945), and its progeny.

6.      Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District. Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

7.      On or about March 18, 2025, Plaintiff filed a Charge of Discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff has properly exhausted his administrative remedies before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter issued by the EEOC on or about May 15, 2026.

**PARTIES**

8.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9.      Plaintiff is a Black adult male with an address as set forth in the caption.

10.      Defendant is a Pennsylvania limited liability company with a principal place of business as set forth in the caption.

11. Defendant is a tree removal and stump grinding business serving Hershey, Lebanon, Huntingdon & Dauphin County, PA.

12. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. On or about December 16, 2019, Defendant hired Mr. Sutton as a Groundsman/Tree Climber. Sometime in or about the Spring of 2023, Defendant promoted Mr. Sutton to Crew Chief and employed him in that capacity until unlawfully terminating him on or about September 19, 2024, as discussed herein.

15. Upon information and belief, Defendant employed fifteen (15) or more employees including employees paid cash (or under the table) for each working day in each of twenty or more calendar weeks.

16. Throughout his employment, Mr. Sutton was a hard-working and dedicated employee with little or no history of discipline or performance issues.

17. Mr. Sutton is a Black male and upon information and belief was the only Black employee during his tenure working for Defendant.

18. In or about July 2024, Mr. Sutton severely injured his shoulder while at work.

19. Mr. Sutton immediately reported his injuries and approximately two (2) weeks after his workplace injury, sought medical attention as his aforementioned injuries had progressively gotten worse,

20.     Mr. Sutton's medical providers diagnosed him with a fractured collarbone and associated complications/conditions and restricted him to light duty work.

21.     Mr. Sutton's shoulder injuries and accompanying symptoms and conditions, at times, substantially limit his ability to perform daily life activities such as using his arm(s), lifting items, driving, etc.

22.     As a result of these aforementioned disabilities, Mr. Sutton, at times, required and requested reasonable accommodations such as intermittent medical leave and light duty.

23.     Initially, Defendant's management attempted to pressure Mr. Sutton to keep his injuries "off the books" and discouraged him from opening a workers' compensation claim.

24.     However, on the day Defendant terminated Mr. Sutton, Defendant first reported the injury and opened a workers' compensation claim well after the fact in an attempt to cover its tracks.

25.     Separately, in the months and weeks leading up to Mr. Sutton's eventual termination, Mr. Sutton was subjected to blatant race/color discrimination.

26.     By way of brief example:

   a. Other employees (including supervisors) frequently made derogatory comments directed at Mr. Sutton's race/color, including stating to Mr. Sutton that rival tree companies won bids because they "**nigger rigged that shit**."

   b. In addition, Mr. Sutton was routinely called racially derogatory slurs such as "jig-a-boo" and made racially charged comments about chicken and watermelon;

   c. Supervisors equated Mr. Sutton to a piece of farm equipment;

   d. Clients would frequently make racist comments to him, such as for example only, "What prison did they find you at?"; and

   e. Told he was "one of the good *ones*" because he was articulate.

27.     When Mr. Sutton objected and protested about discriminatory conduct, Defendant said he had a "poor attitude" and labeled him as angry or "standoffish," common racist tropes associated with an "angry black man" stereotype. Mr. Sutton was even told that "slavery was long ago" so his complaints did not matter.

28.     After Mr. Sutton started complaining and pushing back against the blatantly discriminatory conduct, Defendant suddenly began giving Mr. Sutton less desirable assignments, stopped reimbursing him for fuel costs, and  simultaneously sent Mr. Sutton on substantially further jobs (some upwards of four (4) hours roundtrip).

29.     Within mere weeks, on or about September 19, 2024, Defendant's management abruptly terminated Mr. Sutton because it was "not working out."

30.     To be clear, Mr. Sutton had never been disciplined and Defendant's management had never raised any documented performance concerns – the only thing that changed in his employment was his aforementioned disabilities, seeking workers' compensation benefits, and opposing discrimination.

## COUNT I
## Violations of Title VII
### [1] Race/Color Discrimination; [2] Harassment; and [3] Retaliation

31.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32.     Discrimination based on Plaintiff's race/color constitutes discrimination under Title VII.

33.     Plaintiff was subjected to severe and/or pervasive discrimination and harassment because of his race/color (discussed *supra*) sufficient to alter the conditions of his employment such that he was subjected to a hostile work environment.

34.    Plaintiff specifically opposed, rejected, and complained of race/color discrimination, retaliation, and hostile work environment (based on his race/color).

35.    Following his opposition of, rejections to, and complaints about discriminatory comments and slurs, Plaintiff was subjected to increased hostility and animosity (retaliatory treatment).

36.    Plaintiff's complaints were dismissed, and he was subjected to retaliatory treatment and hostility (such that he was subjected to an objectively hostile and abusive work environment based on race/color and retaliation for opposing/complaining about the same).

37.    In extremely close proximity to Plaintiff's most recent complaints, Defendant terminated Plaintiff's employment under demonstrably pretextual circumstances.

38.    Plaintiff believes and therefore avers that his race/color was a determinative and/or motivating factor in Defendant's decision to terminate his employment.

39.    Plaintiff also believes and therefore avers that Defendant terminated his employment because he opposed and complained about discrimination and harassment based upon his race/color.

40.    These actions violate Title VII.

**COUNT II**
**Violations of 42 U.S.C. §1981**
**[1] Race/Color Discrimination; [2] Harassment; and [3] Retaliation**

41.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42.    Discrimination based on Plaintiff's race/color constitutes discrimination under §1981.

43.     Plaintiff was subjected to severe and/or pervasive discrimination and harassment because of his race/color (discussed *supra*) sufficient to alter the conditions of his employment such that he was subjected to a hostile work environment.

44.     Plaintiff specifically opposed, rejected, and complained of race/color discrimination, retaliation, and hostile work environment (based on his race/color).

45.     Following his opposition of, rejections to, and complaints about discriminatory comments and slurs, Plaintiff was subjected to increased hostility and animosity (retaliatory discipline).

46.     Plaintiff's complaints were dismissed, and he was subjected to retaliatory discipline and hostility (such that he was subjected to an objectively hostile and abusive work environment based on race/color and retaliation for opposing/complaining about the same).

47.     In extremely close proximity to Plaintiff's most recent complaints, Defendant terminated Plaintiff's employment under demonstrably pretextual circumstances.

48.     Plaintiff believes and therefore avers that Defendant terminated his employment because of his race and/or because he opposed and complained about discrimination and harassment based upon his race/color.

49.     These actions violate §1981.


**COUNT III**
**Violations of the ADA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**and [3] Failure to Accommodate)**


50.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51.     Plaintiff suffers from qualifying health conditions under the ADA, which affected his ability (at times) to perform some daily life activities (as set forth *supra*).

52.     Despite Plaintiff's aforementioned health conditions and limitations, he was still qualified and able to perform the essential functions of his job with Defendant.

53.     Prior to his pretextual termination, Plaintiff disclosed his aforementioned disabilities/serious medical conditions and need for accommodations to Defendant's management before Defendant terminated his employment.

54.     Plaintiff therefore avers that his actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of his employment with Defendant.

55.     Plaintiff also avers that he was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the ADA.

56.     Finally, Plaintiff avers that he was terminated as a direct result of Defendant's desire to no longer accommodate him and Defendant further failed to engage in the interactive process in good faith.

57.     Defendant's actions constitute violations of the ADA.


**COUNT IV**
**Violations of the PHRA**
**[1] Race/Color Discrimination; [2] Harassment; and [3] Retaliation**

58.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.     Discrimination based on Plaintiff's race/color constitutes discrimination under the PHRA.

60.    Plaintiff was subjected to severe and/or pervasive discrimination and harassment because of his race/color (discussed *supra*) sufficient to alter the conditions of his employment such that he was subjected to a hostile work environment.

61.    Plaintiff specifically opposed, rejected, and complained of race/color discrimination, retaliation, and hostile work environment (based on his race/color).

62.    Following his opposition of, rejections to, and complaints about discriminatory comments and slurs, Plaintiff was subjected to increased hostility and animosity (retaliatory discipline).

63.    Plaintiff's complaints were dismissed, and he was subjected to retaliatory discipline and hostility (such that he was subjected to an objectively hostile and abusive work environment based on race/color and retaliation for opposing/complaining about the same).

64.    In extremely close proximity to Plaintiff's most recent complaints, Defendant terminated Plaintiff's employment under demonstrably pretextual circumstances.

65.    Plaintiff believes and therefore avers that his race/color was a determinative and/or motivating factor in Defendant's decision to terminate his employment.

66.    Plaintiff also believes and therefore avers that Defendant terminated his employment because he opposed and complained about discrimination and harassment based upon his race/color.

67.    The actions violate the PHRA.

**COUNT V**
**Violations of the PHRA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**and [3] Failure to Accommodate)**

9

68.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69.    Plaintiff suffers from qualifying health conditions under the PHRA, which affected his ability (at times) to perform some daily life activities (as set forth supra).

70.    Despite Plaintiff's aforementioned health conditions and limitations, he was still qualified and able to perform the essential functions of his job with Defendant.

71.    Prior to his pretextual termination, Plaintiff disclosed his aforementioned disabilities/serious medical conditions and need for accommodations to Defendant's management before Defendant terminated his employment.

72.    Plaintiff therefore avers that his actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of his employment with Defendant.

73.    Plaintiff also avers that he was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the PHRA.

74.    Finally, Plaintiff avers that he was terminated as a direct result of Defendant's desire to no longer accommodate him and Defendant further failed to engage in the interactive process in good faith.

75.    Defendant's actions constitute violations of the PHRA.


**COUNT VI**
**Violations of Pennsylvania Common Law**
**(Workers' Compensation Retaliation)**

76.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

77.    Plaintiff engaged in protected activity, namely sustaining a workplace injury, seeking medical treatment, and pursuing (or expressing his intent to pursue) a workers' compensation claim.

78.    Defendant then terminated Plaintiff in extremely suggestive temporal proximity and under demonstrably pretextual circumstances because he engaged in the aforementioned protected activity.

79.    These actions constitute violations of Pennsylvania common law. *See e.g., Shick v. Shirley*, 552 Pa. 590, 716 A.2d 1231, 1233 (Pa. 1998).

**WHEREFORE**, Plaintiff prays that this Court enters an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

11

E.	Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.	Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:	Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 31, 2026